**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | |
|---|---|
| CARRIE WOMACK, *individually and on behalf of all others similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>AFLAC INCORPORATED,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Carrie Womack ("Plaintiff"), individually and on behalf of the Class defined below of similarly situated persons, alleges the following against Defendant Aflac Incorporated ("Aflac" or "Defendant"), based upon Plaintiff's personal knowledge and on information and belief derived from, among other things, investigation by counsel as to all other matters:

## INTRODUCTION

1. This action arises from Defendant's failure to secure the personally identifiable information ("PII") and protected health information ("PHI")[1] (collectively, "Sensitive Private Information") of Plaintiff and the members of the proposed Class, where Plaintiff provided her Sensitive Private Information to Defendant for supplemental insurance services and products.

2. Aflac, a Fortune 500 company, provides financial protection to millions of policyholders in the United States and Japan through its subsidiaries. When a covered individual

[1] Pursuant to the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. § 1320d et seq., and its implementing regulations, PHI is defined as individually identifiable information related to an individual's health status, provision of healthcare, or payment for healthcare. 45 C.F.R. § 160.103. PHI includes data such as diagnoses, treatment information, test results, prescriptions, identification numbers, and certain demographic details. See *Summary of the HIPAA Privacy Rule*, U.S. Dep't of Health & Human Servs., https://www.hhs.gov/hipaa/for-professionals/privacy/laws-regulations/index.html.

becomes ill or injured, Aflac pays eligible claims directly to the insured (unless otherwise assigned).[2]

3. On or about June 20, 2025, Defendant began sending emails with the subjects "Aflac Cybersecurity Incident" to Plaintiff and Class Members, notifying them of recently detected suspicious activity on its network. In the Notice Email, Aflac stated that its investigation into the cybersecurity incident was ongoing and that it had not yet determined the scope of the unauthorized activity, the nature of the potentially compromised data, or the identities of the customers or individuals affected by the data breach (the "Data Breach").[3]

4. According to the Notice Email, the Sensitive Private Information intruders accessed and infiltrated from Defendant's systems included claims information, health information, social security numbers, and/or other personal information, related to customers, beneficiaries, employees, agents, and other individuals in Defendant's U.S. business.[4]

5. As a result of the Data Breach, which Defendant failed to prevent, the Sensitive Private Information of Plaintiff and the proposed Class Members, was stolen.[5]

6. Rather than protecting the rights of Plaintiff and Class Members, Aflac intentionally, willfully, recklessly, and/or negligently failed to implement reasonable safeguards to secure the Sensitive Private Information of its current and former customers, beneficiaries, employees, agents, and other individuals associated with its U.S. operations. Defendant also failed to take the necessary steps to prevent the unauthorized disclosure of that information. As a result,

---

[2] https://www.aflac.com/about-aflac/default.aspx. (last visited June 26, 2025).
[3] https://newsroom.aflac.com/2025-06-20-Aflac-Incorporated-Discloses-Cybersecurity-Incident (last visited June 26, 2025).
[4] *Id.*
[5] *Id.*

the Data Breach was not only foreseeable—it was a likely and direct consequence of Defendant's grossly inadequate data security practices.

7. As a direct and proximate result of the Data Breach, Plaintiff and Class Members have suffered actual, ongoing, and imminent injuries, including but not limited to: (a) threats of identity theft, fraud, and misuse of their Sensitive Private Information; (b) loss of value and confidentiality of their data; (c) loss of the benefit of their bargain; (d) unlawful sale of their compromised information; (e) mitigation costs and time spent addressing the breach; (f) identity theft insurance and "out-of-pocket" expenses; (g) credit freezes and fraud alerts; (h) decreased credit scores; (i) emotional distress, including anxiety and nuisance; and (j) continued risk of future harm, as their Sensitive Private Information remains in Defendant's possession without adequate safeguards.

8. Plaintiff and Class Members would not have provided their valuable Sensitive Private Information had they known that Defendant would make their Sensitive Private Information Internet-accessible, not encrypt personal and sensitive data elements, and not delete the Sensitive Private Information it no longer had reason to maintain.

9. Through this lawsuit, Plaintiff seeks to hold Defendant responsible for the injuries they inflicted on Plaintiff and Class Members due to their impermissibly inadequate data security measures, and to seek injunctive relief to ensure the implementation of security measures to protect the Sensitive Private Information that remains in Defendant's possession.

10. Once Sensitive Private Information is exposed to cybercriminals, the damage cannot be undone. Before the Data Breach, Plaintiff's and Class Members' information was secure and confidential. Now, it is permanently compromised—no longer private, and at ongoing risk of misuse.

## JURISDICTION AND VENUE

11. The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of Class Members is in the millions, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

12. This Court has personal jurisdiction over Defendant because it is a Georgia corporation that operates and has its principal place of business in this District and conducts substantial business in this District.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events giving rise to this action occurred in this District. Moreover, Defendant is domiciled in this District, maintains Plaintiff's and Class Members' Sensitive Private Information in this District, and has caused harm to Plaintiff and Class Members in this District.

## PARTIES

14. Plaintiff Carrie Womack is, and at all relevant times has been, a resident and citizen of Alton, Illinois.

15. Defendant is a Georgia corporation with its headquarters and principal place of business located at 1932 Wynnton Road, Columbus, Georgia 31999.

## FACTUAL ALLEGATIONS

### A. *The Data Breach*

16. Plaintiff and Class Members were required to provide Defendant with their Sensitive Private Information, including their names, claims information, health information, Social Security numbers, and other sensitive information, that at the time of the Data Breach were held by Defendant in its computer systems.

17. The Notice Letter sent by Aflac to Plaintiff and Class Members states:

> On June 12, 2025, Aflac Incorporated identified suspicious activity on our network in the United States.
>
> We have engaged leading third-party cybersecurity experts to support our response to this incident. While the investigation remains in its early stages, in the spirit of transparency and care for our customers, we are sharing that our preliminary findings indicate that the unauthorized party used social engineering tactics to gain access to our network. The potentially impacted files contain claims information, health information, social security numbers, and/or other personal information, related to customers, beneficiaries, employees, agents, and other individuals in our U.S. business. We remain committed to caring for and supporting our customers. While our teams work to review the potentially impacted data and determine the specific information involved, we are offering any individual who contacts our dedicated call center free credit monitoring and identity theft protection, and Medical Shield for 24 months.

Ex. A.

18. In the Notice Letter, Defendant offers Plaintiff and Class Members 24 months of credit monitoring and provides a dedicated call center to answer questions they may have about the Data Breach.

**B. *The Inherent Value of Sensitive Private Information***

19. In April 2020, ZDNet reported in an article titled "Ransomware mentioned in 1,000+ SEC filings over the past year", that "[r]ansomware gangs are now ferociously aggressive in their pursuit of big companies. They breach networks, use specialized tools to maximize damage, leak corporate information on dark web portals, and even tip journalists to generate negative news for complaints as revenge against those who refuse to pay."[6]

20. Stolen Sensitive Private Information is frequently bought and sold on the dark web, as appears to be the case here. Due to sophisticated encryption and anonymizing technologies,

[6] https://www.zdnet.com/article/ransomeware-mentioned-in-1000-sec-filings-over- the-past-year/. (last accessed June 29, 2025).

users—particularly cybercriminals—can conceal their identities and activities, making it exceedingly difficult for law enforcement to monitor or intervene.

21. When malicious actors breach a company's systems and exfiltrate stored Sensitive Private Information, that data often ends up on the dark web, where it is bought and sold for profit. The growing digitalization of modern businesses has only expanded the number of potential targets for such cyberattacks. [7]

22. The Sensitive Private Information of consumers remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, Sensitive Private Information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $2009. Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web. Criminals can also purchase access to entire company data breaches.[89]

23. Once Sensitive Private Information is sold, it is often used to gain access to various areas of the victim's digital life, including bank accounts, social media, credit card, and tax details. This can lead to additional Sensitive Private Information being harvested from the victim, as well as Sensitive Private Information from family, friends and colleagues of the original victim.

---

[7] *Shining a Light on the Dark Web with Identity Monitoring, IdentityForce*, Dec. 28, 2020,https://www.identityforce.com/blog/shining-light-dark-web-identity- monitoring. (last accessed June 29, 2025).

[8] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, https://www.experian.com/blogs/ask-experian/heres-how- much-your-personal-information-is-selling-for-on-the-dark-web/. (last accessed June 29, 2025).

[9] *In the Dark*, VPNOverview, 2019, https://vpnoverview.com/privacy/anonymous- browsing/in-the-dark/. (last accessed June 29, 2025).

24. According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses in 2019, resulting in more than $3.5 billion in losses to individuals and business victims.

25. Data breaches facilitate identity theft as hackers obtain consumers' Sensitive Private Information and thereafter use it to siphon money from current accounts, open new accounts in the names of their victims, or sell consumers' Sensitive Private Information to others who do the same.

26. The market for Sensitive Private Information has continued unabated to the present, and in 2023 the number of reported data breaches in the United States increased by 78% over 2022, reaching 3205 data breaches.[10]

27. The exposure of Plaintiff's and Class Members' Sensitive Private Information to cybercriminals will continue to cause substantial risk of future harm that is continuing and imminent in light of the many different avenues of fraud and identity theft utilized by third-party cybercriminals to profit off of this highly sensitive information.

### C. *Aflac's Noncompliance with Regulatory Requirements and Industry Standards.*

28. Federal and state regulators have established security standards and issued recommendations to temper data breaches and the resulting harm to consumers and employees. There are a number of state and federal laws, requirements, and industry standards governing the protection of Sensitive Private Information.

---

[10] Beth Maundrill, *Data Privacy Week: US Data Breaches Surge, 2023 Sees 78% Increase in Compromises*, INFOSECURITY MAGAZINE (Jan. 23, 2024); https://www.infosecurity-magazine.com/news/us-data-breaches-surge-2023/; *see also* Identity Theft Resource Center, *2023 Data Breach Report*, https://www.idtheftcenter.org/publication/ 2023-data-breach-report/. (last accessed June 29, 2025).

29. At least 24 states have enacted laws addressing data security practices that require businesses that own, license, or maintain Sensitive Private Information about a resident of that state to implement and maintain "reasonable security procedures and practices" and to protect Sensitive Private Information from unauthorized access.

30. Additionally, cybersecurity firms have promulgated a series of best practices that at a minimum should be implemented by sector participants including, but not limited to: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting of physical security systems; protecting against any possible communication system; and training staff regarding critical points.[11]

31. Accordingly, the Federal Trade Commission ("FTC") has issued several guides for businesses, highlighting the importance of reasonable data security practices. According to the FTC, the need for data security should be considered for all business decision-making.[12]

32. Under the FTC's 2016 *Protecting Personal Information: Guide for Business* publication, the FTC notes that businesses should safeguard the personal information they retain; properly dispose of unnecessary personal information; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to rectify security issues.[13]

---

[11] *See Addressing BPO Information Security: A Three-Front Approach*, DATAMARK, INC. (Nov. 2016), https://insights.datamark.net/addressing-bpo- information-security.
[12] *Start With Security*, Fed. Trade Comm'n ("FTC"), https://www.ftc.gov/system/files/documents/plain-language/pdf0205- startwithsecurity.pdf.
[13] *Protecting Personal Information: A Guide for Business*, FTC, https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

33. The guidelines also suggest that businesses use an intrusion detection system to expose a breach as soon as it happens, monitor all incoming traffic for activity indicating someone is trying to hack the system, watch for large amounts of data being siphoned from the system, and have a response plan in the event of a breach.

34. The FTC advises companies to not keep information for periods of time longer than needed to authorize a transaction, restrict access to Sensitive Private Information, mandate complex passwords to be used on networks, utilize industry-standard methods for security, monitor for suspicious activity on the network, and verify that third-party service providers have implemented reasonable security measures.

35. The FTC has brought enforcement actions against companies for failing to adequately and reasonably protect consumer data, treating the failure to do so as an unfair act or practice barred by Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45. Orders originating from these actions further elucidate the measures businesses must take to satisfy their data security obligations.

36. Aflac's failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

37. Aflac's failure to verify that it had implemented reasonable security measures constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

38. Furthermore, Defendant is required to comply with the HIPAA Privacy Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C. The Privacy

Rule and the Security Rule set nationwide standards for protecting health information, including health information stored electronically.

39. Pursuant to HIPAA's mandate that Defendant follows "applicable standards, implementation specifications, and requirements . . . with respect to electronic protected health information," 45 C.F.R. § 164.302, Defendant was required to, at minimum, "review and modify the security measures implemented . . . . as needed to continue provision of reasonable and appropriate protection of electronic protected health information," 45 C.F.R. § 164.306(e), and "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

40. Aflac is also required to follow the regulations for safeguarding electronic medical information pursuant to the Health Information Technology Act ("HITECH"). *See* 42 U.S.C. § 17921, 45 C.F.R. § 160.103.

41. Both HIPAA and HITECH obligate Defendant to follow reasonable security standards, respond to, contain, and mitigate security violations, and to protect against disclosure of sensitive patient Sensitive Private Information. *See* 45 C.F.R. § 164.306(a)(1) and § 164.306(a)(3); 45 C.F.R. § 164.530(f); 42 U.S.C. § 17902.

42. As alleged in this Complaint, Defendant has failed to comply with HIPAA and HITECH. It has failed to maintain adequate security practices, systems, and protocols to prevent data loss, failed to mitigate the risks of a data breach and loss of data, and failed to ensure the confidentiality and protection of PHI.

**D. *Defendant Failed to Adhere to Industry Standards***

43. Widely recognized cybersecurity best practices serve as essential resources for organizations developing effective data protection standards. Among these, the Center for Internet Security ("CIS") has published its *Critical Security Controls*, which outline the most prevalent and damaging cyber threats facing businesses and provide actionable strategies to defend against them. Organizations that collect and manage Sensitive Private Information—like Defendant—are strongly encouraged to implement these controls to safeguard sensitive data.

44. Moreover, the CIS Benchmarks are widely regarded as the standard of choice among auditors and security professionals worldwide when advising organizations on secure system configurations. These benchmarks support compliance with a range of governance and security frameworks, including PCI DSS, NIST 800-53, SOX, FISMA, ISO/IEC 27002, the Gramm-Leach-Bliley Act and ITIL.

45. Several best practices have been identified that a minimum should be implemented by data management companies like Defendant, including but not limited to securely configuring business software, managing access controls and vulnerabilities to networks, systems, and software, maintaining network infrastructure, defending networks, adopting data encryption while data is both in transit and at rest, and securing application software.

46. Defendant failed to follow these and other industry standards to adequately protect the Sensitive Private Information of Plaintiff and Class Members.

**E. *The Data Breach Has Harmed Class Members and Exposes Them to Future Fraud.***

47. Without detailed disclosure to the victims of the Data Breach, individuals whose Sensitive Private Information was compromised by the Data Breach, including Plaintiff and Class Members, were unknowingly and unwittingly exposed to continued misuse and ongoing risk of

misuse of their Sensitive Private Information for months without being able to take available precautions to prevent imminent harm.

48. The ramifications of Defendant's failure to secure Plaintiff's and Class Members' data are severe.

49. Victims of data breaches are much more likely to become victims of identity theft and other types of fraudulent schemes. This conclusion is based on an analysis of four years of data that correlated each year's data breach victims with those who also reported being victims of identity fraud.

50. The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[24] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person."[25]

51. Identity thieves can use Sensitive Private Information, such as that of Plaintiff and Class Members, which Defendant failed to keep secure, to perpetrate a variety of crimes that harm victims. For instance, identity thieves may commit various types of government fraud, such as: immigration fraud; obtaining a driver's license or identification card in the victim's name but with another's picture; using the victim's information to obtain government benefits; or filing a fraudulent tax return using the victims.

52. There may be a time lag between when harm occurs versus when it is discovered, and also between when Sensitive Private Information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity

> theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[14]

53. Accordingly, Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. Plaintiff and Class Members Suffered Damages.

54. As a direct result of Defendant's misconduct and the Data Breach, Plaintiff and Class Members have already suffered fraudulent misuse of their Sensitive Private Information and face an ongoing, heightened risk of identity theft. In response, they have spent significant time and effort on mitigation measures—such as freezing credit, monitoring accounts, contacting financial institutions, and responding to phishing attempts—time that has been irretrievably lost.

55. Defendant's wrongful actions and omissions directly caused the theft and public dissemination of Plaintiff's and Class Members' Sensitive Private Information, resulting in ongoing economic and actual harm. These injuries include the theft and misuse of personal and financial data; the imminent and substantial risk of identity theft and fraud; untimely and inadequate breach notification; improper disclosure of sensitive information; loss of privacy; out-of-pocket expenses and lost time spent mitigating the breach's effects; diminished value of their Sensitive Private Information, which has a recognized market; and the inconvenience and disruption of addressing fraudulent charges, replacing cards, and managing compromised accounts. Despite the breach, Defendant continues to retain Plaintiff's and Class Members' Sensitive Private Information, raising serious concerns given its demonstrated inability to adequately protect or promptly eliminate such data. Plaintiffs and the Class therefore have a vested

---

[14] GAO, Report to Congressional Requesters, at 29 (June 2007), http://www.gao.gov/new.items/d07737.pdf

interest in ensuring their information is secured, remains protected, and is properly destroyed to prevent further harm.

### F. *Plaintiff's Experiences.*

56. Plaintiff is a current Aflac customer who was required to provide Sensitive Private Information—including her Social Security number and PHI—to obtain insurance coverage.

57. Specifically, Plaintiff provided this information to obtain two Aflac insurance policies: Critical Illness coverage and Hospital Indemnity coverage, both in effect from November 2023 to the present.

58. Plaintiff provided Sensitive Private Information to Defendant on the condition that it be maintained as confidential and with the understanding that Defendant would employ reasonable safeguards to protect her Sensitive Private Information.

59. On June 25, 2025, Plaintiff logged into her Aflac online account and was notified by Aflac of the Data Breach. *See* Ex. A.

60. Since the Data Breach, Plaintiff has experienced anxiety and increased concerns for the loss of her privacy, as well as anxiety over the impact of cybercriminals accessing and using her Sensitive Private Information.

61. Plaintiff would not have entrusted her Sensitive Private Information to Defendant had she known they would not take reasonable steps to safeguard her information.

62. Plaintiff has a continuing interest in ensuring that her Sensitive Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

63. Plaintiff is very careful about sharing Sensitive Private Information.

64. She stores documents containing Sensitive Private Information in safe and secure locations and has never knowingly transmitted unencrypted Sensitive Private Information over the Internet or any other unsecured source. Plaintiff would not have entrusted her Sensitive Private Information to Defendant had she known of Defendant's lax data security policies.

65. As a direct and proximate result of the Data Breach, Plaintiff has made reasonable efforts to mitigate the impact of the Data Breach, including by regularly and closely monitoring her financial accounts.

66. As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the harms caused by the Data Breach. She has faced and faces a present and continuing risk of fraud and identity theft for her lifetime.

**CLASS ALLEGATIONS**

67. Plaintiff brings this class action individually and on behalf of the following nationwide class:

68. All individuals residing in the United States whose Sensitive Private Information was compromised as a result of the Data Breach (the "Class").

69. Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, officers, agents, and directors, any entities in which Defendant has a controlling interest, as well as the judge(s) presiding over this matter and the clerks, judicial staff, and immediate family members of said judge(s).

70. Plaintiff reserves the right to modify or amend the foregoing Class definition before the Court determines whether certification is appropriate.

71. This action may be certified as a class action because it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements of Rule 23 of the Federal Rules of Civil Procedure.

72. **Numerosity:** The Class is so numerous that joinder of all Class Members is impracticable. Although the precise number of such persons is unknown, and the facts are presently within the sole knowledge of Defendant, upon information and belief, Plaintiff estimates that the Class is comprised of millions of Class Members. The Class is sufficiently numerous to warrant certification.

73. **Typicality of Claims**: Plaintiff's claims are typical of those of other Class Members because Plaintiff, like the unnamed Class, had her Sensitive Private Information compromised as a result of the Data Breach. Plaintiff is a member of the Class, and her claims are typical of the claims of the members of the Class. The harm suffered by Plaintiff is similar to that suffered by all other Class Members, which was caused by the same misconduct by Defendant.

74. **Adequacy of Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interests antagonistic to, or in conflict with, the Class. Plaintiff has retained competent counsel who are experienced in consumer and commercial class action litigation and who will prosecute this action vigorously.

75. **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual Class Members are relatively small, the expense and burden of individual litigation make it impossible for individual Class Members to seek redress for the wrongful conduct asserted herein. If Class treatment of these claims is not available, Defendant will likely continue its wrongful

conduct, will unjustly retain improperly obtained revenues, or will otherwise escape liability for its wrongdoing as asserted herein.

76. **Commonality and Predominance**: Common questions of law and fact exist as to all Class Members and predominate over any potential questions affecting only individual Class Members. These common questions of law or fact include:

- Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;
- Whether Defendant's data security systems prior to and during the Data Breach compiled with applicable data security laws and regulations;
- Whether Defendant's storage of Plaintiff's and Class Member's Sensitive Private Information was done in a negligent manner;
- Whether Defendant had a duty to protect and safeguard Plaintiff's and Class Members' Sensitive Private Information;
- Whether Defendant's conduct was negligent;
- Whether Defendant's conduct violated Plaintiff's and Class Members' privacy;
- Whether Defendant's conduct violated the statutes as set forth herein;
- Whether Defendant took sufficient steps to secure individuals' Sensitive Private Information;
- Whether Defendant was unjustly enriched; and
- The nature of the relief, including damage and equitable relief, to which Plaintiff and Class Members are entitled.

77. Information concerning Defendant's polices is available from Defendant's records.

78. Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would prelude its maintenance as a class action.

79. The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications and establish incompatible standards of conduct for Defendant. Prosecution as a class action will eliminate the possibility of repetitions and inefficient litigation.

**COUNT I**
**NEGLIGENCE**
**(On Behalf of Plaintiff and the Class)**

80. Plaintiff restates and realleges the preceding allegations above as if fully alleged herein.

81. Defendant requires its customers, beneficiaries, employees, and agents to submit non-public Sensitive Private Information as a condition of receiving services, products, or employment.

82. Defendant gathered and stored the Sensitive Private Information of Plaintiff and Class Members as part of its business, which affects commerce.

83. Plaintiff and Class Members entrusted Defendant with their Sensitive Private Information with the understanding that the information would be safeguarded.

84. Defendant had full knowledge of the sensitivity of the Sensitive Private Information and the types of harm that Plaintiff and Class Members could and would suffer if their Sensitive Private Information were wrongfully disclosed.

85. By assuming the responsibility to collect and store this data, Defendant had duties of care to use reasonable means to secure and to prevent disclosure of the information, and to safeguard the information from theft.

86. Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that their systems and networks, and the personnel responsible for them, adequately protected the Sensitive Private Information.

87. Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant, on the one hand, and Plaintiff and Class Members, on the other hand. That special relationship arose because Defendant was entrusted with their confidential Sensitive Private Information as a condition of receiving services, products, or employment from Defendant.

88. Defendant also had a duty to exercise appropriate clearinghouse practices to remove the Sensitive Private Information of its former customers, beneficiaries, employees, and agents they were no longer required to retain pursuant to regulations.

89. Moreover, Defendant had a duty to promptly and adequately notify Plaintiff and the Class of the Data Breach but failed to do so.

90. Defendant had and continues to have duties to adequately disclose that Plaintiff's and Class Members' Sensitive Private Information within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Sensitive Private Information by third parties.

91. Defendant breached its duties and thus was negligent, by failing to use reasonable measures to protect Plaintiff's and Class Members' Sensitive Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Sensitive Private Information;

b. Failing to adequately monitor the security of their networks and systems;

c. Allowing unauthorized access to Class Members' Sensitive Private Information;

d. Failing to detect in a timely manner that Class Members' Sensitive Private Information had been compromised;

e. Failing to remove Sensitive Private Information of its former customers, beneficiaries, employees, and agents they were no longer required to retain pursuant to regulations; and

f. Failing to adequately notify Class Members about the Data Breach's occurrence and scope, so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

92. Defendant breached its duties to Plaintiff and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Sensitive Private Information.

93. Defendant knew or should have known that its failure to implement reasonable data security measures to protect and safeguard Plaintiff's and Class Members' Sensitive Private Information would cause damage to Plaintiff and the Class.

94. A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

95. It was foreseeable that Defendant's failure to use reasonable measures to protect Class Members' Sensitive Private Information would result in injury to Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of corporate cyberattacks and data breaches.

96. Defendant had full knowledge of the sensitivity of the Sensitive Private Information and the types of harm that Plaintiff and the Class could and would suffer if the Sensitive Private Information were wrongfully disclosed.

97. Plaintiff and the Class were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing Sensitive Private Information, the critical importance of providing adequate security of that Sensitive Private Information, and the necessity for encrypting Sensitive Private Information stored on its systems.

98. Plaintiff and the Class had no ability to protect their Sensitive Private Information that was in, and possibly remains in, Defendant's possession.

99. Defendant was in a position to protect against the harm suffered by Plaintiff and the Class as a result of the Data Breach.

100. Defendant's duties extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which have been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures have also recognized the existence of a specific duty to reasonably safeguard personal information.

101. Defendant has admitted that the Sensitive Private Information of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

102. But for Defendant's wrongful and negligent breaches of duties owed to Plaintiff and the Class, Plaintiff's and Class Members' Sensitive Private Information would not have been compromised.

103. There is a close causal connection between Defendant's failure to implement security measures to protect Plaintiff's and Class Members' Sensitive Private Information, and the harm, or risk of imminent harm, suffered by Plaintiff and the Class. Sensitive Private Information was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care by adopting, implementing, and maintaining appropriate security measures.

104. As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) the actual misuse of their compromised Sensitive Private Information; (ii) invasion of privacy; (iii) lost or diminished value of Sensitive Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) an increase in spam calls, texts, and/or emails (vii) the continued and certainly increased risk to their Sensitive Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Sensitive Private Information; (viii) future costs in terms of time, effort and money that will be expended to prevent, detect, contest, and repair the inevitable and continuing consequences of compromised Sensitive Private Information for the rest of their lives; (ix) the

present value of ongoing credit monitoring and identity defense services necessitated by the Data Breach; (x) the value of the unauthorized access to their Sensitive Private Information permitted by Defendant; and (xi) any nominal damages that may be awarded.

105. As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses including nominal damages.

106. Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

107. Defendant's negligent conduct is ongoing, in that it still possesses Plaintiff's and Class Members' Sensitive Private Information in an unsafe and insecure manner.

108. As a direct and proximate result of Defendant's negligence, Plaintiff and Class members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

**COUNT II**
**NEGLIGENCE *PER SE***
**(On Behalf of Plaintiff and the Class)**

109. Plaintiff restates and realleges the preceding allegations above as if fully alleged herein.

110. Defendant had duties arising under the FTC Act and HIPAA to protect Plaintiff's and Class Members' Sensitive Private Information.

111. Defendant breached its duties, pursuant to the FTC Act, HIPAA, and other applicable standards, and thus was negligent, by failing to use reasonable measures to protect Plaintiff's and Class Members' Sensitive Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following: (i) failing to

adopt, implement, and maintain adequate security measures to safeguard Class Members' Sensitive Private Information; (ii) failing to adequately monitor the security of their networks and systems; (iii) allowing unauthorized access to Class Members' Sensitive Private Information; (iv) failing to detect in a timely manner that Class Members' Sensitive Private Information had been compromised; (v) failing to remove the Sensitive Private Information of its former customers, beneficiaries, employees, agents, and other individuals they were no longer required to retain pursuant to regulations; and (vi) failing to timely and adequately notify Class Members about the Data Breach's occurrence and scope, so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

112. Defendant's violations of Section 5 of the FTC Act and HIPAA (and similar state statutes) constitute negligence *per se*.

113. Plaintiff and Class Members are consumers within the class of persons that Section 5 of the FTC Act and HIPAA were intended to protect.

114. The harm that has occurred is the type of harm the FTC Act and HIPAA were intended to guard against.

115. The FTC has pursued enforcement actions against businesses that, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

116. Defendant breached its duties to Plaintiff and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Sensitive Private Information.

117. In addition, under state data security and consumer protection statutes such as those outlined herein, Defendant had a duty to implement and maintain reasonable security procedures and practices to safeguard Plaintiff's and Class Members' Sensitive Private Information.

118. Plaintiff and Class Members were foreseeable victims of Defendant's violations of the FTC Act and HIPAA, and state data security and consumer protection statutes. Defendant knew or should have known that its failure to implement reasonable data security measures to protect and safeguard Plaintiff's and Class Members' Sensitive Private Information would cause damage to Plaintiff and the Class.

119. As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) the actual misuse of their compromised Sensitive Private Information; (ii) invasion of privacy; (iii) lost or diminished value of Sensitive Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) an increase in spam calls, texts, and/or emails; and (vii) the continued and certainly increased risk to their Sensitive Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Sensitive Private Information.

120. As a direct and proximate result of Defendant's negligence *per se* Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

**COUNT III**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Class)**

121. Plaintiff restates and realleges the preceding allegations above as if fully alleged herein.

122. Defendant was entrusted with Plaintiff's and Class Members' Sensitive Private Information as part of Defendant's regular business practices.

123. In so doing, Plaintiff and the Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached and compromised or stolen, in return for the business services provided by Defendant. Implied in these exchanges was a promise by Defendant to ensure that the Sensitive Private Information of Plaintiff and Class Members in its possession was secure.

124. Pursuant to these implied contracts, Defendant agreed to (1) take reasonable measures to protect the security and confidentiality of Plaintiff and Class Members' Sensitive Private Information; and (2) protect Plaintiff and Class Members' Sensitive Private Information in compliance with federal and state laws and regulations and industry standards.

125. Implied in these exchanges was a promise by Defendant to ensure the Sensitive Private Information of Plaintiff and Class Members in its possession was only used to provide the agreed-upon reasons, and that Defendant would take adequate measures to protect Plaintiff and Class Members' Sensitive Private Information.

126. A material term of this contract is a covenant by Defendant that it would take reasonable efforts to safeguard that information. Defendant breached this covenant by allowing Plaintiff and Class Members' Sensitive Private Information to be accessed in the Data Breach.

127. Implicit in the agreement between Defendant and Plaintiff and Class Members was the obligation that both parties would maintain information confidentially and securely.

128. These exchanges constituted an agreement and meeting of the minds between the parties.

129. When the parties entered into an agreement, mutual assent occurred.

130. Plaintiff and Class Members would not have disclosed their Sensitive Private Information to Defendant but for the prospect of utilizing Defendant services. Conversely, Defendant presumably would not have taken Plaintiff and Class Members' Sensitive Private Information if it did not intend to provide Plaintiff and Class Members with its services.

131. Defendant was therefore required to reasonably safeguard and protect the Sensitive Private Information of Plaintiff and Class Members from unauthorized disclosure and use.

132. Plaintiff and Class Members would not have entrusted their Sensitive Private Information to Defendant in the absence of their implied contracts with Defendant and would have instead retained the opportunity to control their Sensitive Private Information.

133. Defendant breached the implied contracts with Plaintiff and Class Members by failing to reasonably safeguard and protect Plaintiff and Class Members' Sensitive Private Information.

134. Defendant's failure to implement adequate measures to protect the Sensitive Private Information of Plaintiff and Class Members violated the purpose of the agreement between the parties.

135. As a proximate and direct result of Defendant's breaches of its implied contracts with Plaintiff and Class Members, Plaintiff and the Class Members suffered damages as described in detail above.

**COUNT IV**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

136. Plaintiff restates and realleges the preceding allegations above as if fully alleged herein.

137. This count is brought in the alternative to Count III (breach of implied contract count).

138. Plaintiff and Class Members conferred a benefit upon Defendant when Defendant obtained their Sensitive Private Information.

139. Defendant appreciated or had knowledge of the benefits conferred upon itself by Plaintiff. Defendant also benefited from the receipt of Plaintiff's and Class Members' Sensitive Private Information.

140. Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and the Class Members' Sensitive Private Information because Defendant failed to adequately protect their Sensitive Private Information. Plaintiff and the proposed Class would not have provided their Sensitive Private Information to Defendant had they known Defendant would not adequately protect their Sensitive Private Information.

141. Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds received by it because of its misconduct and the Data Breach it caused.

**COUNT V**
**BREACH OF CONFIDENCE**
**(On Behalf of Plaintiff and the Class)**

142. Plaintiff restates and realleges the preceding allegations above as if fully alleged herein.

143. At all times during Plaintiff's and Class Members' interactions with Defendant, Defendant was fully aware of the confidential and sensitive nature of Plaintiffs' and Class Members' Sensitive Private Information that Plaintiff and Class Members entrusted to Defendant.

144. As alleged herein and above, Defendant's relationship with Plaintiff and the Class were governed by terms and expectations that Plaintiff's and Class Members' Sensitive Private Information would be collected, stored, and protected in confidence, and would not be disclosed to unauthorized third partis.

145. Defendant was entrusted with Plaintiff and Class Members' Sensitive Private Information with the explicit and implicit understanding that Defendant would protect and not permit the Sensitive Private Information to be disseminated to nay unauthorized third parties.

146. Defendant was entrusted with Plaintiff and Class Members Sensitive Private Information with the explicit and implicit understandings that Defendant would take precautions to protect that Sensitive Private Information from unauthorized disclosure.

147. Defendant voluntarily received Plaintiff's and Class Members' Sensitive Private Information in confidence with the understanding that their Sensitive Private Information would not be disclosed or disseminated to the public or any unauthorized third parties.

148. As a result of Defendant's failure to prevent and avoid the Data Breach from occurring, Plaintiff's and Class Members' Sensitive Private Information was disclosed and misappropriated to unauthorized third parties beyond Plaintiff's and Class Members' confidence, and without their express permission.

149. As a direct and proximate cause of Defendant's actions and omissions, Plaintiff and the Class have suffered damages.

150. But for Defendant's disclosure of Plaintiff's and Class Members' Sensitive Private Information in violation of the parties' understanding of confidence, their Sensitive Private Information would not have been compromised stolen, viewed, accessed, and used by unauthorized third parties. Defendant's Data Breach was the direct and legal cause of the theft of Plaintiff's and Class Members' Sensitive Private Information as well as the resulting damages.

151. The injury and harm Plaintiff and the Class suffered was the reasonably foreseeable result of Defendant's unauthorized disclosure of Plaintiff's and Class Members' Sensitive Private Information. Defendant knew or should have known its methods of accepting and securing Plaintiff's and Class Members' Sensitive Private Information was inadequate as it relates to, at the very least, securing servers and other equipment containing Plaintiff's and Class Members' Sensitive Private Information.

152. As a direct and proximate result of Defendant's breach of its confidence with Plaintiff and the Class, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) identity theft; (ii) the loss of the opportunity how their Sensitive Private Information is used; (iii) the compromise, publication, and/or theft of their Sensitive Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Sensitive Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual present and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their Sensitive Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect

the Sensitive Private Information of individuals; and (viii) present and future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Sensitive Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

153. As a direct and proximate result of Defendant's breach of confidence, Plaintiff and the Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

**COUNT VI**
**DECLARATORY JUDGEMENT**
**(On Behalf of Plaintiff and the Class)**

154. Plaintiff restates and realleges the preceding allegations above as if fully alleged herein.

155. Plaintiff brings this claim individually and on behalf of the Class.

156. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and granting further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal statutes described in this Complaint.

157. An actual controversy has arisen in the wake of the Data Breach regarding Defendant's present and prospective common law and other duties to reasonably safeguard Plaintiff's and Class members' Sensitive Private Information, and whether Defendant is currently maintaining data security measures adequate to protect Plaintiff and Class members from future data breaches that compromise their Sensitive Private Information. Plaintiff and the Class remain at imminent risk that additional compromises of their Sensitive Private Information will occur in the future.

158. The Court should also issue prospective injunctive relief requiring Defendant to employ adequate security practices consistent with law and industry standards to protect consumers' Sensitive Private Information.

159. Defendant still possess Plaintiff's and Class members' Sensitive Private Information.

160. Defendant has made no announcement that it has changed its data storage or security practices relating to the storage of Plaintiff's and Class members' Sensitive Private Information.

161. To Plaintiff's knowledge, Defendant has made no announcement or notification that it has remedied the vulnerabilities and negligent data security practices that led to the Data Breach.

162. If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and lack an adequate legal remedy in the event of another data breach at Aflac. The risk of another such breach is real, immediate, and substantial.

163. The hardship to Plaintiff and Class members if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued. Among other things, if another data breach occurs at Aflac, Plaintiff and Class members will likely continue to be subjected to a heightened, substantial, imminent risk of fraud, identify theft, and other harms described herein. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

164. Issuance of the requested injunction will not compromise the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach at

Aflac, thus eliminating the additional injuries that would result to Plaintiff and Class members, along with other consumers whose Sensitive Private Information would be further compromised.

165. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring that Aflac implement and maintain reasonable security measures, including but not limited to the following:

a. Engaging third-party security auditors/penetration testers, as well as internal security personnel, to conduct testing that includes simulated attacks, penetration tests, and audits on Aflac systems on a periodic basis, and ordering Aflac to promptly correct any problems or issues detected by such third- party security auditors;

b. Engaging third-party security auditors and internal personnel to run automated security monitoring;

c. Auditing, testing, and training its security personnel regarding any new or modified procedures;

d. Purging, deleting, and destroying Sensitive Private Information not necessary for its provisions of services in a reasonably secure manner;

e. Conducting regular database scans and security checks; and

f. Routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach.

**PRAYER FOR RELIEF**

Plaintiff, individually and on behalf of all other members of the Class, respectfully requests that the Court enter judgment in Plaintiff's favor and against Defendant as follows:

A. Certifying the Class as requested herein, designating Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel;

B. Awarding Plaintiff and the Class appropriate monetary relief, including actual damages, statutory damages, punitive damages, restitution, nominal damages and disgorgement;

C. Awarding Plaintiff and the Class equitable, injunctive, and declaratory relief, as may be appropriate. Plaintiff, on behalf of herself and the Class, seeks appropriate injunctive relief designed to prevent Defendant from experiencing another data breach by adopting and implementing best data security practices to safeguard Sensitive Private Information and to provide or extend credit monitoring services and similar services to protect against all types of identity theft;

D. Awarding Plaintiff and the Class pre-judgment and post-judgment interest to the maximum extent allowable;

E. Awarding Plaintiff and the Class reasonable attorneys' fees, costs, and expenses, as allowable; and

F. Awarding Plaintiff and the Class such other favorable relief as allowable under law.

**JURY TRIAL DEMAND**

Plaintiff demands a trial by jury of all claims herein so triable.

Dated: July 2, 2025.

Respectfully submitted,

*/s/Taylor C. Bartlett*
[*local counsel*]
Taylor C. Bartlett (GA Bar No. 778655)
Email: taylor@hgdlawfirm.com
**HENINGER GARRISON DAVIS, LLC**
2727 Paces Ferry Rd SE #750
Atlanta, GA 30339

Telephone: (205) 326-3336
Facsimile: (205) 326-3332

Andrea Gold (Lead Counsel)*
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue, NW, Suite 1010
Washington, D.C. 20006
Phone: (202) 973-0900
*agold@tzlegal.com*

*Counsel for Plaintiff and the Proposed Class*

**pro hac vice* forthcoming